IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL ALETUM          :
                        :
  v.                    :  Civil Action No. DKC 20-1793
                        :
PETER GRAZZINI, et al.  :
                        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this disability discrimination case is Defendants' motion to dismiss (ECF No. 14). The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to dismiss will be granted, albeit without prejudice.

**I. Background**

Unless otherwise noted, the facts outlined here are set forth in the complaint or are undisputed and construed in the light most favorable to Plaintiff.  Plaintiff Michael Aletum is a deaf, Maryland resident.  His complaint is not clear in its timeline of events, but his opposition and supplemental filings fill in some relevant dates.[1]  Defendant applied for a "Receiving Supervisor"

---

[1] Although docketed as supplements to Plaintiff's opposition, these are really attempts to amend the complaint insofar as they raise new factual allegations. (*See* ECF Nos. 19, 21, 22, and 23). A complaint cannot be amended in this fashion, but these papers, and the opposition itself, help fill in the relevant background.

position with Defendant Perfect Settings LLC ("Perfect Settings")[2] on June 5, 2019.  (*See* ECF Nos. 18, at 12 and 18-1, at 2).

Perfect Settings reached out to Mr. Aletum via the Purple Relay Service system (a communication service for the deaf) requesting that he come to the office for an interview.[3]  He alleges that, during this call, he requested an accommodation for the anticipated interview, "but they did not want to provide it." Perfect Settings staff explained that Mr. Grazzini was out of the office when they initially refused his request, but that he would be "back to figure it out."  Mr. Aletum alleges that he never got another direct response, despite following-up.  He only found out that they had moved on with other candidates, he asserts, when he received an automated rejection email on June 21, 2019, which he appends to his opposition.  (ECF No. 18-1, at 13).

Plaintiff subsequently filed a discrimination claim with the Equal Employment Opportunity Commission ("EEOC") against Perfect Settings on December 16, 2019, arguing that Perfect Settings violated the Americans with Disabilities Act of 1990 ("ADA") by failing to provide him reasonable accommodation for an in-person

---

[2] Plaintiff refers to Perfect Settings as an "Inc." throughout his complaints.  Defendants' subsequent filings make clear that the company is an LLC. (*See, e.g.*, ECF No. 14, at 1).

[3] A subsequent attachment to the Opposition purports to show that this call was made on June 18 at 2:34 p.m.  (ECF No. 18-1, at 10).

interview. On March 2, 2020, the EEOC issued Plaintiff a "Dismissal and Notice of Rights" ("Right to Sue letter"). (ECF No. 1-1).

On April 13, 2020, Mr. Aletum filed a complaint against Perfect Settings in this court for a failure "to provide [] reasonable accommodation for interview in person," although that complaint failed explicitly to identify the requested accommodation. (Initially docketed as ECF No. 1 in DKC 20-944).

On April 30, 2020, Plaintiff filed a second and separate complaint in the United States District Court for the District of Columbia adding Peter Grazzini, "Managing Member" of Perfect Settings, as a Defendant. (ECF No. 1). Its allegations are largely the same as the first, but it clarifies that the "reasonable accommodation" he requested during the Purple Relay call was for an "(ASL [American Sign Language] Interpreter) during interview session." He says this request was refused because "my disability was denied for the management role" and "had been rejected by [] [P]erfect Settings." On May 21, the D.C. court transferred the complaint to this district, noting it was the proper venue. (ECF No. 3). On June 22, the case was assigned and docketed here as DKC 20-1793, and a notice went out to the parties. (ECF Nos. 4 and 5). The two cases were then consolidated by order on July 31, 2020, with the complaint in DKC 20-1793 (ECF No. 1) acting as the "operative complaint," because it was the "more

3

comprehensive one." (ECF No. 6) (docketing the complaint in DKC 20-944 as ECF No. 7).

On August 20, 2020, Defendants moved to dismiss under Fed.R.Civ.P. 12(b)(1) and 12(b)(6), arguing that 1) "the Court lacks subject matter jurisdiction over Plaintiff's discrimination claims," 2) "the claims against Mr. Grazzini must be dismissed as the ADA does not allow such claims against him as an individual," and 3) Plaintiff fails sufficiently to plead the required elements of a discrimination claim. (ECF No. 14).  On September 10, Plaintiff filed his opposition to the motion to dismiss (ECF No. 18) and submitted an "Evidentiary attachment" that purports to show the "Status" of Plaintiff's EEOC complaint as "EEOC is collecting evidence about your case." (ECF No. 19).  Defendants filed a reply on September 29 (ECF No. 20).  Plaintiff subsequently has filed attempted supplements of his opposition on October 2, 15, and 16. (ECF Nos. 21, 22, and 23).

## II. Standard of Review

Defendants have styled their motion to dismiss on exhaustion grounds as a Fed.R.Civ.P. 12(b)(1) motion but this argument, like the motion to dismiss the claim as insufficiently pled, is properly

4

treated under Fed.R.Civ.P. 12(b)(6). *Byrd v. Ta Chen Int'l*, No. DKC 19-1873, 2020 WL 4933636, at *2 & n.5 (D.Md. August 24, 2020).[4]

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

---

[4] This court explained in the context of Title VII that "Defendant['s] arguments concerning exhaustion of administrative remedies . . . are more properly claims that Plaintiff failed to allege 'essential ingredients of a federal claim of relief' and thus do not challenge subject matter jurisdiction.'" *Byrd*, 2020 WL 4933636, at *2 (citing *Johnson v. Maryland Dep't of Labor, Licensing, and Reg.*, 386 F.Supp.3d 608, 613 n.1, (D. Md. 2019) and *Fort Bend Cty., Tx. V. Davis*, 139 S.Ct. 1843, 1846 (2019) (abrogating *Jones v. Giant of Md., LLC.*, 551 F.3d 297, 3000 (4th Cir. 2009), insofar as Title VII's "charge-filing instruction is not jurisdictional."). The same is true of exhaustion under the ADA; "Modeled after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the ADA incorporates that statute's enforcement procedures, *id.* § 12117(a), including the requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court, *see id.* § 2000e–5(b), (f)(1)." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591 (4th Cir. 2012).

complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented. *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999).  That is, even when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990);  *Forquer v. Schlee*, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) ("[E]ven a pro se complaint must be dismissed if it does not allege a plausible claim for relief." (citation and internal quotation marks omitted)).

**III. Analysis**

    **A.   Administrative Exhaustion**

Defendants move to dismiss for failure to exhaust administrative remedies because it has been informed that the EEOC reopened its investigation. Defendants contend that Plaintiff cannot bring this action while the EEOC investigation is ongoing. Although Plaintiff obtained a Right to Sue Letter, it was "revoked" subsequently when the EEOC agreed to reconsider the dismissal and reopen the investigation.

Both parties agree that the EEOC investigation remains open now that the EEOC vacated its own dismissal. (ECF No. 14-1, at 6); (ECF No. 18, at 16) ("my charge of discrimination is Still Open and the merit of the charge of discrimination is still processing now."). 29 C.F.R. § 1601.21(d)(1) expressly permits the EEOC to reconsider a dismissal or a determination finding and revoke a Right to Sue letter as long as the reconsideration is issued within "90 days from receipt of a notice of right to sue" and "the charging party has not filed suit." If suit has already been filed or the 90 days has passed, the decision only acts to revoke the dismissal but not the right to sue. *Fisher v. Conax Techs., LLC*, No. 14-CV-913S(F), 2015 WL 3505810, at *2 (W.D.N.Y. June 3, 2015) (citing 29 C.F.R. § 1601.21(b)(1)(2014)). Here the Right to Sue letter was issued on March 2, the Notice of Intent to

Reconsider was issued on April 28, but Plaintiff filed here on April 13.

Neither side has objected to the EEOC's purported revocation of the Right to Sue Letter.  (*See* ECF No. 14-1, at 5); (ECF No. 18, at 5-6)(citing ECF. 18-1).  Other courts, however, have stated that such a purported revocation of the Right to Sue is ineffective.  *See, e.g., Obaseki v. Fannie Mae*, 840 F.Supp.2d 341 (D.D.C. 2012)("However, *Daugherty* indicates that even if the EEOC purports to revoke the right to sue letter, according to EEOC regulations, that revocation is ineffective . . ." [if made after the 90 day period or after the charging party has filed suit.] (citing *Dougherty v. Barry*, 869 F.2d 605 (D.C.Cir. 1989)).

Plaintiff requests "the court to await the EEO[C] exhaust [sic] the administrative remedy or conciliation after EEO[C]'s investigation is done" and for "the court to await EEO[C] to update 'Notice of right to sue letter['] in the future."  (ECF No. 18, at 16).  But because the notice of reconsideration was issued weeks after Plaintiff initially sued in this court, Plaintiff will not be entitled to a new right to sue letter upon completion of the reconsideration.  Thus, dismissal, even if without prejudice, would not be in his interest.  The Right to Sue letter is still-operative, Plaintiff has exhausted his administrative remedies and the motion to dismiss on this ground will be denied.

This leaves the two other questions raised in Defendants' motion: whether Plaintiff, alleging discrimination under the ADA, has 1) properly named Mr. Grazzini a Defendant and 2) sufficiently stated the elements of a claim.

**B.   Mr. Grazzini**

Defendants are correct that the ADA does not recognize a cause of action against individual employees who are not "employers." (ECF No. 14-1, at 7) (citing *Barid ex rel. Baird v. Rose*, 192 F.2d 462, 472 (4th Cir. 1999); see also *Jones v. Sternheimer*, 387 Fed.Appx. 366, 2010 WL 2711305 (citing *McNeal v. Montgomery County, Md.,* 307 Fed.Appx. 766, 775 n. 6 (4th Cir.2009) ("[O]nly an employer, not an individual employee, may be held liable under the ADEA.")). Insofar as the complaint purports to name him in his supervisory or "official" capacity, it is redundant as he would "simply stand in the shoes of the already-sued" Perfect Settings as its "Managing Member." *Taylor v. Leggett*, No. PX 16-11, 2017 WL 1001281, at *3 (D.Md. Mar. 15, 2017) (citing *Innes v. Bd. Of Regents of Univ. Sys. Of Md.*, 29 F.Supp.3d 566, 575 (D.Md. 2014)). The claims against Mr. Grazzini will be dismissed.

**C.   ADA Discrimination**

In *Myers v. Md. Dept. of Agric.*, Judge Hollander explained the purpose and function of the ADA in this context:

> Title I [of the ADA] prohibits discrimination "against a qualified individual on the basis of disability in regard to job application

9

> procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); *see also Summers v. Altarum Inst., Corp.*, 740 F.3d 325, 328 (4th Cir. 2014) ("The ADA makes it unlawful for covered employers to 'discriminate against a qualified individual on the basis of disability.'"). A "qualified individual" is defined as a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

No. ELH-17-2239, 2018 WL 3068695, at *6 (D.Md. June 21, 2018) (granting a motion to dismiss on a failure to hire claim).

### 1. Failure to Hire

Defendants posit that "[a]lthough not plainly stated, Plaintiff seeks to bring a claim under the ADA for discriminatory failure to hire." This is far from clear, even with Plaintiff's stray and erroneous reference to Perfect Settings as his "employer". (ECF No. 14-1, at 6) (citing ECF No. 1, at 3). The sole, explicit, and repeated allegation is that the business simply failed reasonably to accommodate his disability during the application process. Seen in the light most favorable to Plaintiff, however, the failure to hire claim can be inferred.

To plead a failure to hire claim under the ADA, a Plaintiff must plausibly plead that he "(1) is disabled within the meaning of the ADA; (2) applied for the vacant position; (3) was qualified for the position; and (4) was rejected for the position under

circumstances giving rise to an inference of unlawful discrimination." *Reyazuddin v. Montgomery Cty., Md.*, 7 F.Supp.3d 526 *aff'd in part*, *rev'd on other grounds, Reyazuddin v. Montgomery Cty, Md.*, 789 F.3d 407 (4th Cir. 2015).

Defendants press on the third element and argue that the complaint utterly fails to establish what the necessary skills or responsibilities were for a "Receiving Supervisor" or that Mr. Aletum possessed these skills. They argue that even accepting that the first two elements are satisfied, Plaintiff has not alleged facts sufficient to show he was qualified for the position. Any failure to hire claim will be dismissed without prejudice. Plaintiff will be given twenty-one days to amend and add detail to a failure to hire claim, if he wishes.

### 2. Failure to Accommodate

Judge Hollander also wrote in *Myers*:

> Unlawful discrimination under Title I of the ADA "can include the failure to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . .'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 344 (4th Cir. 2013) (quoting § 12112(b)(5)(A)). Moreover, "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability" may qualify as "discrimination against a qualified individual on the basis of disability." 42 U.S.C. § 12112(b)(5)(B).

11

2018 WL 3068695, at *6.  The Fourth Circuit case on which Judge Hollander relies sets forth the claim's basic elements:

> (1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position ...; and (4) that the [employer] refused to make such accommodations

*Wilson*, 717 F.3d at 345.

Defendants incorporate their arguments on the failure to hire claim and state "Plaintiff has failed to demonstrate that he is a qualified individual capable of performing essential functions of the position with Perfect Settings if afforded a reasonable accommodation."  (ECF No. 14-1, at 8-9).  Defendants' also argue in their reply that Plaintiff's opposition is entirely nonresponsive to their arguments and thus he has conceded those points.  (ECF No. 20, at 1-2).

While a great deal of the opposition and supplemental filings are nonresponsive, there are portions that clearly address some elements of this claim.  Plaintiff argues that Defendants were on notice of his disability as evidenced by the fact that they called him "by Purple" when they first reached out to him to set up an

12

interview.  (ECF No. 18, at 14-15).[5]  As before, Defendants implicitly concede the first two elements, however.

As to the third element, ADA regulations clearly state that "[t]t is unlawful for a covered entity not to make reasonable accommodation to the known physical or mental limitations of an *otherwise qualified applicant* or employee with a disability." 29 C.F.R. § 1630.9 (emphasis added).  Caselaw on this point helps clarify that, as a result, failure to accommodate claims, even those involving job applicants, come with some quantum of evidence that the Plaintiff was "otherwise qualified" for the position to which he was applying. *See Manickavasagar v. Virginia Commonwealth University School of Medicine,* 667 F.Supp.2d 635, 644-45 (E.D. Va. 2009) (discussing "otherwise qualified" in the context of an applicant for admission); *E.E.O.C. v. Creative Networks, LLC*, 912 F.Supp.2d 828, 837 (D.Ariz. Sept. 20, 2012) (employer conceded a deaf applicant who requested an ASL interpreter for pre-employment orientation and training was otherwise qualified).

Even assuming Mr. Aletum puts forth evidence to show the other elements of his failure to accommodate claim, he has failed to plead sufficient facts that tend to show that he is "otherwise

---

[5] As Plaintiff adds in a supplemental filing, Perfect Settings' use of this system shows he is "deaf applicant in their systems" or that it is otherwise aware of his disability.  (ECF No. 21, at 1-2).  As this supplement was filed after Defendants' reply, it is technically a surreply, but will considered in clarifying that point.

13

qualified" to perform the duties of the post to which he applied. While being invited for an interview might be some indication of qualification, it is not sufficient. As with the previous claim, Plaintiff needs to more explicit about the requirements of the job and his own qualifications in order for this claim to move forward. The motion to dismiss this claim will be granted, but Plaintiff similarly will be granted twenty-one days to amend in order to state this claim with more particularity.

**IV. Conclusion**

For the foregoing reasons, the motion to dismiss filed by Defendants will be granted with prejudice as to the claims against Mr. Grazzini but without prejudice as to the claims against Perfect Settings. A separate order will follow.

                                                      /s/
DEBORAH K. CHASANOW
United States District Judge